**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **CVS PHARMACY, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **C.A. NO. 1:21-cv-00070-WES-LDA** |
| ) | |
| **TIMOTHY BROWN** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## <u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>MOTION TO DISMISS OR TRANSFER VENUE</u>

Defendant Timothy Brown ("Brown") submits this Memorandum of Law in support of his motion to dismiss or transfer venue. For the reasons stated herein, Mr. Brown requests pursuant to Fed. R. Civ. P. 12(b) and 28 U.S.C. §§ 1404 and 1406 that the Court dismiss this matter or, in the alternative, transfer the matter to the United States District Court for the Western District of Washington.

## <u>INTRODUCTION</u>

The Court should not entertain or adjudicate Plaintiff's motion for injunctive relief for three important threshold reasons, each of which constitutes a separate and independent basis for the Court to stay its hand and either dismiss this case or transfer it to the proper United States District Court:

<u>Lack of Personal Jurisdiction</u>. This case involves a contract executed in Washington, performed entirely in Washington, to be enforced against Washington employee, and the Defendant is a Washington resident who lacks sufficient minimum contacts with Rhode Island for

this Court to exercise personal jurisdiction over him.  Accordingly, as an initial matter, this case should be dismissed, without prejudice, for lack of personal jurisdiction.

<u>Improper Venue – Including for Violation of Wash. Rev. Code § 49.62.050, which Mandates that Washington Employees May Not be Sued on a Noncompete Outside of Washington</u>. Even if jurisdiction over Defendant was proper in Rhode Island, this matter should in any event be transferred to the United States District Court for the Western District of Washington, as Mr. Brown lives in Seattle and at all relevant times worked in Seattle for Plaintiff CVS Pharmacy, Inc.'s ("CVS") corporate affiliate, Aetna Resources LLC ("Aetna").  By initiating this action in Rhode Island, CVS is willfully violating Washington's noncompete statute, Wash. Rev. Code § 49.62.010 *et seq.* (the "Noncompete Act").  The Noncompete Act specifies that any provision in a noncompetition covenant signed by an employee who is Washington-based is void and unenforceable if the covenant requires the employee to adjudicate a noncompetition covenant outside Washington. Wash. Rev. Code §§ 49.62.050 and 49.62.100.  This law was enacted more than a year ago, with substantial attendant publicity, and applies to all cases filed after January 1, 2020 regardless of the date of the agreement or when the cause of action accrued.  By bringing this action in Rhode Island, CVS is knowingly and willfully violating the laws of Washington under which CVS's Aetna affiliate opted to employ Mr. Brown, and is doing so solely for its own perceived tactical advantage or convenience.  Such willful violation of an employment law statute in the state in which Mr. Brown worked should not be tolerated by the Court, much less rewarded by entertaining the extraordinary relief of a temporary restraining order or preliminary injunction.

<u>Improper Venue – The Rhode Island Venue Clause in the Agreement Applies Solely to Claims Mr. Brown may have Against CVS, but Not for Claims by CVS Against Mr. Brown</u>.  The venue clause in the Agreement on which CVS relies not only does not help CVS establish a right

to drag Mr. Brown across the country to defend in Rhode Island, but to the contrary it suggests that the parties specifically contemplated that claims CVS might have against Mr. Brown *would not be litigated in Rhode Island*. The only clause in the agreement addressing venue states that, "I agree that any claim or dispute I may have against the Corporation must be resolved by a court located in the state of Rhode Island." It says nothing about claims against that CVS may have against Mr. Brown. This is very specific language, drafted by CVS, and its clear implication is that only claims against CVS are designated for Rhode Island forum, while any other claims would lie in the natural forum for such claims, Washington.

## **RELEVANT FACTS**

Mr. Brown was employed by CVS's Aetna affiliate from November 2017 through his resignation in January 2021. At all times during his employment, Mr. Brown was a resident of the State of Washington and worked for Aetna in the State of Washington. Indeed, Mr. Brown moved to Washington from Durham, North Carolina in order to accept Aetna's offer of employment in Washington. At the time Mr. Brown accepted the position and moved to Washington, Aetna was not owned by CVS. That occurred a year later in November 2018. Following that acquisition, Mr. Brown signed the Restrictive Covenant Agreement (the "Agreement") upon which CVS bases its claims in this case.

The sole grounds upon which Plaintiff bases its allegation that Defendant is subject to personal jurisdiction in Rhode Island is the inclusion of the following clause in the Agreement:

> **19. Governing Law; Venue; Headings.** This Agreement shall be governed by and construed in accordance with the Laws of the state of Rhode Island. I agree that any claim or dispute I may have against the Corporation must be resolved by a court located in the state of Rhode Island.

4838-3515-2093, v. 1

*See* Agreement at ¶ 19, attached as Exhibit 1 to Plaintiff's Complaint (Dkt. 1-1). Of course, this case consists solely of claims brought *against* Mr. Brown by CVS, and none by Mr. Brown against CVS.

Moreover, in its Complaint, while CVS makes a cursory effort to plead contacts to establish jurisdiction over the person, the allegations are non-specific, and even taking them on their face they are not sufficient to constitute an intentional decision by Mr. Brown to establish contacts with Rhode Island. While CVS pleads that he attended training sessions for CVS in Rhode Island, he did so upon instruction of CVS during one trip to Rhode Island, not out of any voluntary choice to go and conduct business in Rhode Island. He was not choosing to avail himself of any advantages of doing business in Rhode Island. Other than that, the only other allegation is that CVS is resident in Rhode Island, yet even Mr. Brown's arguably most voluntary act – accepting employment with Aetna – occurred at a time when Aetna was not part of CVS and was not headquartered in Rhode Island. In short, any contacts Mr. Brown had with Rhode Island were foisted on him by a merger of corporate behemoths that took place far above his head, and a few meetings during one visit that his post-merger conglomerate employer mandated he attend.[1]

Mr. Brown does not and has not ever owned or rented real property in Rhode Island. He does not and has not ever been a resident of Rhode Island. He has never paid property or income tax in Rhode Island. He has never had bank accounts in Rhode Island. He does not and has not maintained any personal property in Rhode Island. While employed by CVS/Aetna he was not responsible for and did not work or manage any business of CVS/Aetna at any time in Rhode Island. The only contacts CVS/Aetna can point to is the sole visit to Rhode Island that CVS/Aetna

---

[1] The limited relevant facts pertaining to this motion are set forth in the Declaration of Timothy Brown in Support of Motion to Dismiss or Transfer.

4838-3515-2093, v. 1

itself mandated, when Mr. Brown was required to spend a few days in Rhode Island for training sessions and meetings. *See* Declaration of Timothy Brown in Support of Motion to Dismiss or Transfer.

## ARGUMENT

### I. Plaintiff's Claims Against Brown Should Be Dismissed For Lack Of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) tests the Court's authority to exercise power over those subject to suit. "The plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state." *Baskin-Bobbins Franchising v. Alpenrose Dairy*, 825 F.3d 28, 34 (1st Cir. 2016). The District Court may exercise two types of personal jurisdiction over defendants: general and specific jurisdiction. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 9 (1st Cir. 2009). General jurisdiction broadly subjects the defendant to suit in the forum on all matters, including those unrelated to the defendant's contacts with the forum. *BlueTarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 79 (1st Cir. 2013); *Cossaboon v. Me. Med. Ctr.*, 600 F.3d 25, 31 (1st Cir. 2010).[2] Specific jurisdiction, by contrast, depends on "an affiliatio[n] between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011).

Where, as here, specific jurisdiction is asserted, Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33(a), must authorize it. *BlueTarp Fin., Inc.*, 709 F.3d at 79; *Astro-Med, Inc.*, 591 F.3d at 8. The Rhode Island long-arm statute is coextensive with the permissible reach of the Due Process Clause. *Id.* The Due Process Clause of the Fourteenth Amendment to the United States

---

[2] Plaintiff does not allege that Mr. Brown is subject to the general jurisdiction of this Court, and does not allege any facts to support such a claim. Therefore, Mr. Brown will limit his jurisdictional analysis to specific jurisdiction.

Constitution permits a court to exercise jurisdiction over an out-of-forum defendant only if the defendant has "certain minimum contacts with the forum state" related to the claims at issue "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *PREP Tours v. Am. Youth Soccer Org.*, 913 F.3d 11, 17 (1st Cir. 2019).

The First Circuit uses a three-pronged analysis, testing relatedness, purposefulness, and reasonableness, to analyze due process considerations. *PREP Tours*, 913 F.3d at 17 (citing *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)). Specific jurisdiction may be exercised only if the claim underlying the litigation directly arises out of, or relates to, the defendant's forum-state activities. *Id.* Additionally, the defendant's in-state contacts must represent a "purposeful availment" of the privilege of conducting activities in the forum state that invoked the benefits and protections of that state's laws and made the defendant's involuntary presence before that state's courts foreseeable. *Id.* And finally, the exercise of jurisdiction must be reasonable. *Id.*

## A. Plaintiff Does Not Allege Facts Sufficient To Permit The Exercise of Specific Jurisdiction Over Defendant Brown

A plaintiff must affirmatively plead facts that, if true, would establish personal jurisdiction. Here Plaintiff has not carried and cannot carry that burden. The primary basis cited to support personal jurisdiction is reference to the forum selection clause in the Agreement upon which CVS's claims are based. Even assuming, for the moment, the enforceability of that clause despite the strictures of Wash. Rev. Code § 49.62.050 (*see* §§ II(A) and II(C), *infra* to the contrary), that clause does not meet the bar. This Court has noted that a defendant should not be deemed to have purposefully availed himself of the benefits of the forum state merely by signing a contract that specifies the forum state for choice of law and site of litigation purposes. *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d 316, 319 (D. R.I. 1998). Rather, the court must also consider the

prior dealings of the parties, the terms of the contract itself, and the actual and contemplated course of dealings of the parties. *Id.*

Though the forum selection clause at issue is flawed on several levels, the most relevant for jurisdictional purposes is that it speaks solely to forum location, not personal jurisdiction. It states in its entirety:

> This Agreement shall be governed by and construed in accordance with the Laws of the state of Rhode Island. I agree that any claim or dispute I may have against the Corporation must be resolved by a court located in the state of Rhode Island.

Exhibit A to Complaint, at par. 19. This clause contains no explicit or implicit consent to personal jurisdiction as to Defendant.

Typically, the drafter couples a forum selection clause with consent to personal jurisdiction as either a separate or embedded provision. In fact, a survey of cases in which this Court has addressed forum selection clauses in the context of jurisdictional and venue challenges reveals that each dealt with stronger and more precise language than the clause at issue here. *See Textron Fin. Corp. v. Ship & Sail, Inc.*, 2010 WL 1912653, at *7 (D. R.I. May 11, 2010) ("EACH OF THE PARTIES HERETO CONSENTS TO THE NON-EXCLUSIVE JURISDICTION OF THE RHODE ISLAND COURTS . . ."); *Pharm. Servs. v. Swarovski N. Am. Ltd.*, 2006 WL 753055, at *3 (D. R.I. Mar. 21, 2006) (finding contract contained a forum selection clause which provided "that the parties consented to the exercise of personal jurisdiction by the state and federal courts located in Rhode Island."); *Am. Biophysics Corp. v. Dubois Marine Specialties*, 411 D. Supp. 2d 61, 62 (D. R.I. 2006) ("The parties agree that the courts of the State of Rhode Island, and the Federal Courts located therein, shall have exclusive jurisdiction over all matters arising from this Agreement."); *Microfibres, Inc. v. McDevitt-Askew*, 20 F. Supp. 2d 316, 319 (D. R.I. 1998) (" . . . I hereby submit to the jurisdiction and venue of any court sitting in the State of Rhode Island.").

7

In addition to this Court's decisions, and partly based thereon, commentators have similarly noted the importance of including both consent to jurisdiction and forum designation language in a well-drafted forum selection clause. *See, e.g.*, MacGillivray and Ripple, *The Importance of a Carefully Drafted Forum Selection Clause*, counseling:

> When intending a particular jurisdiction to be the sole forum for resolution of a dispute between the parties, as opposed to merely consenting to the forum as an acceptable one, <u>after making it clear that the parties consent to personal jurisdiction in the chosen forum</u>, drafters should include obligatory language or terms, *i.e.*, "exclusive," "sole," "only," "must," with respect to the jurisdiction of the designated venue.

58 RI Bar Jnl. 17 (2000). The clause at issue here omits express consent to personal jurisdiction and elected to preserve as a forum only "a court located in the state of Rhode Island."

Further, the forum selection clause by its own terms does not apply to the instant dispute wherein the Corporation (Aetna) has brought suit against Brown for a claim or dispute it has *against Brown*, not the other way around. The clause as drafted by CVS only applies to a claim or dispute that *Brown has against the Corporation*. *See* Exhibit A to Complaint at par. 19 ("I agree that any claim or dispute I may have against the Corporation must be resolved by a court located in the state of Rhode Island.").

These are more than minor technical flaws, and they arise out of a context where the corporate Plaintiff with all the power in the relationship, and with the benefit of having access to sophisticated counsel, drafted the agreement. The agreement here of course was a contract of adhesion for any employee of companies within the CVS conglomerate, not one where Defendant engaged in any arms-length negotiations over its terms. Plaintiff had every opportunity to draft more effective and self-executing language. Instead, it chose terms that are, if not patently ineffective, at the very least ambiguous and should not operate independently to confer personal

jurisdiction over Defendant. *Pride Hyundai, Inc. v. Chrysler Fin. Co., LLC*, 335 F. Supp. 2d 600,

605 (D. R.I. 2005) (citing *R.I Depositors Econ. Prot. Corp. v. Coffey & Martinelli, Ltd.*, 821 A.2d

222, 226 (R.I. 2003)) ("To the extent there is ambiguity, the Court must construe the language

against the drafter."). Indeed, a reasonable employee reading the language of Paragraph 19, as

written by CVS, would conclude that it purports to require the employee to bring claims it may

have against CVS only in Rhode Island, but that claims CVS might have against the employee

would be filed in the employee's home or office locale.

In sum, this clause, without more, is insufficient to establish personal jurisdiction over

Defendant Brown.

**B.    Plaintiff's Other Allegations Do Not Support Personal Jurisdiction Over Brown**

Plaintiff's cursory effort to allege other facts relating to personal jurisdiction do not even

come close to satisfying the necessary standard. "[A] court may exercise specific personal

jurisdiction over the nonresident defendant if the claim sufficiently relates to or arises from any of

a defendant's purposeful contacts with the forum." *Cerberus Partners, L.P. v. Gadsby & Hannah,

LLP*, 836 A.2d 1113, 1119 (R.I. 2003). The requirement "depends upon the extent to which the

defendants *voluntarily took action* that made it foreseeable they might be required to defend

themselves in court in [the forum state]." *Jet Wine & Spirits, Inc. v. Bacardi & Co.*, 298 F.3d 1,

11 (1st Cir. 2002) (emphasis added). The issue of foreseeability "ensures that a defendant will not

be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or

of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 475 (1984).

Aside from the forum selection clause, Plaintiff alleges only that (1) Brown was employed

by Aetna, which is wholly owned by CVS and CVS has its principal place of business in Rhode

4838-3515-2093, v. 1

Island; (2) Brown attended training sessions and leadership meetings during one visit to Rhode Island in the course of his employment; and (3) in 2019, Brown was awarded and accepted an equity grant from CVS Health Corporation, which is based in Rhode Island. *See* Complaint at ¶ 8 (Dkt. 1). *See* generally Brown Dec. None of these allegations is sufficient to establish specific jurisdiction for this matter.

While CVS pleads that Brown attended training sessions and leadership meetings for CVS in Rhode Island, he did not do so voluntarily. Rather, he was instructed to attend by his employer. Plaintiff's attempt to base specific jurisdiction upon its own unilateral conduct of holding mandatory training sessions and leadership meetings in Rhode Island fails because these contacts do not arise out of contacts that the "defendant himself creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Such conduct is not at all demonstrative of Brown choosing to avail himself of any advantages of doing business in Rhode Island. Moreover, the fact CVS is a Rhode Island corporation does not mean Brown is subject to jurisdiction there. A nonresident defendant's "minimum contacts cannot be based solely on the fact that the plaintiff is located in the forum." *Hawes v. Reilly*, 184 A.3d 661, 671 (R.I. 2018). Brown accepted employment with Aetna before it was acquired by CVS and when it was not headquartered in Rhode Island. Far from conducting business activity in Rhode Island, Brown was hired by Aetna to expand its business and develop relationships in the Pacific Northwest region. Brown lived and worked for Aetna in the Seattle area throughout the entirety of his tenure with Aetna and thereafter with CVS. He had none of the typical contacts that might create jurisdiction, such as working, residing, owning property, or keeping bank accounts in Rhode Island. His limited contacts with Rhode Island were not voluntary and certainly did not cause him to anticipate being haled in to litigate in a Rhode Island court. In short, Brown's sparse and limited contacts with Rhode Island do not

constitute purposeful availment.  Where, as here, purposeful availment elements are lacking, "[t]he inquiry ends" and specific jurisdiction does not exist.  *Phoenix Ins. Co. v. The Cincinnati Indemnity Co.*, 2017 WL 3225924, at *4 (D. R.I. Mar. 3, 2017).

## II.     Even If Personal Jurisdiction Exists, This Matter Should Transferred To The United States District Court For The Western District Of Washington

Even if this Court finds that it may exercise personal jurisdiction over Mr. Brown, Plaintiff's chosen forum is improper and a federal court sitting in Washington is clearly the more appropriate venue for this matter.  Moreover, beyond mere convenience of forum, CVS's very act in bringing this action in Rhode Island constitutes a willful violation of Washington statutory law governing employee relations in Washington, where the Plaintiff chose to employ Mr. Brown.

28 U.S.C. § 1406(a) provides that a "district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  Alternatively, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 21-22 (1st Cir. 2010).  Transfer of venue "prevent[s] the waste of time, energy and money, and . . . protect[s] litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citation omitted).

4838-3515-2093, v. 1

A. **The Interests of Justice Militate in Favor of Rejecting CVS's Willful Decision to Violate Governing Washington Employment Laws for Its Own Convenience or Perceived Tactical Advantage**

The Court should not reward CVS's decision to knowingly violate a Washington statute that governs its relations with an employee that CVS's affiliate, Aetna, chose to employ in Washington. Employers do not have the option to selectively comply with governing state employment laws. The Washington Noncompete Act is no exception. It unequivocally states that:

> A provision in a noncompetition covenant signed by an employee or independent contractor who is Washington-based is void and unenforceable . . . [i]f the covenant requires the employee or independent contractor to adjudicate a noncompetition covenant outside of this state.

Wash. Rev. Code § 49.62.050. Moreover, not only is the provision "void and unenforceable," but violations of the Noncompete Act may be redressed by the Washington Attorney General and/or by private right of action. Wash. Rev. Code § 49.62.080(1). In short, it is an actionable wrongful act for a Washington employer to seek to enforce such a provision.

In addition, the statute is clear that it applies to any action brought after the effective date of the law, regardless of whether the agreement at issue was in existence prior to the statute:

> **Retroactive application**. This chapter applies to all proceedings commenced on or after January 1, 2020, regardless of when the cause of action arose. To this extent, this chapter applies retroactively, but in all other respects it applies prospectively.

Wash. Rev. Stat. § 49.62.100. Moreover, while the statute provides that an aggrieved employee or the Attorney General has a cause of action against any employer using a noncompete that violates the statute, an action against an employer for violation may be brought based on a covenant signed prior to the effective date of the statute, but only if the company is attempting to enforce such an agreement (i.e., an employee cannot sue an employer based solely on a pre-statutory agreement's language if the employer is not trying to enforce it). *See* Wash. Rev. Code §

49.62.080(4) ("A cause of action may not be brought regarding a noncompetition covenant signed prior to January 1, 2020, *if the noncompetition covenant is not being enforced*.") (emphasis added). Section 49.62.080(4) of the Act allows an employer that included an otherwise offending forum selection provision in a noncompete agreement prior to January 1, 2020 to avoid liability simply by refraining from seeking to enforce such a provision after that date.

Moreover, while any company employing people in a given state is charged with knowledge of the state's employment laws, the reality is that the Washington statute received significant national publicity when it was enacted. *See, e.g.,* Daniel Saeedi & Rachel L. Schaller, *Washing State Joins Noncompete Law Parade*, WORKFORCE.COM, January 22, 2020, https://www.workforce.com/news/washington-joins-noncompete-law-parade; Tim O'Connell, *Opinion: Employers need to prepare for new noncompete laws,* THE BUSINESS JOURNALS, August 28, 2019, https://www.bizjournals.com/seattle/news/2019/08/28/opinion-employers-need-to-prepare-for-new.html; Sue Reisinger, *Washington State Passes Law To Limit Noncompete Agreements for Employees*, LAW.COM/CORPORATECOUNSEL, May 6, 2019, https://www.law.com/corpcounsel/2019/05/06/washington-state-passes-law-to-limit-noncompete-agreements-for-employees/; Jennifer Janeira Nagle & Mark D. Pomfret, *2019 Non-Compete Statutes are Officially in Effect: Are Employers Ready*?, THE NATIONAL LAW JOURNAL, January 21, 2020, https://www.natlawreview.com/article/2019-non-compete-statutes-are-officially-effect-are-employers-ready; John Barry & Daryl Leon, *Non-Competes in Washington – Over-Reaching Could Cost Employers*, THE NATIONAL LAW REVIEW, May 13, 2019, https://www.natlawreview.com/article/non-competes-washington-over-reaching-could-cost-employers; Cary Burke, *Five Fast Facts about Washington's New Noncompetition Law*, THE

NATIONAL LAW REVIEW, May 10, 2019, https://www.natlawreview.com/article/five-fast-facts-about-washington-s-new-noncompetition-law

By ignoring the Act and opting to bring litigation in Rhode Island in reliance on the venue provision of the Agreement, CVS has now willfully violated the Act. The interests of justice are not served by rewarding tactical maneuvering in litigation that is accomplished through willful violations of another state's statutory employment laws. To the contrary, the best way to serve the interests of justice here is to force CVS to honor Washington law, where Mr. Brown worked for the company, by transferring this case to the United States District Court for the Western District of Washington.

**B.      The Western District of Washington is the Most Appropriate Venue.**

Even setting aside the overriding problem of CVS's violation of Washington statutory law by bringing this action here, the First Circuit Court of Appeals has held that the following factors should be considered when deciding on transfer of venue: (1) the convenience of the parties and the witnesses, (2) the availability of documents, (3) the possibility of consolidation, and (4) the order in which the district court obtained jurisdiction. *Coady v. Ashcroft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).

With regard to the first factor, Defendant Brown has virtually no connections to Rhode Island other than that he was formerly employed by a company headquartered in Rhode Island. His activity in Rhode Island was minimal while employed by Aetna, and now that he has terminated his employment, he has no connection to the state. Unlike Aetna, which maintains a close corporate connection to Washington and points across the Pacific Northwest, Brown would face substantial inconvenience in potentially needing to arrange for travel to Rhode Island for

depositions, court proceedings, and/or eventual trial in this matter.[3]  While Aetna can readily tap into its network of offices and communication outposts in Washington, Brown would be severely disadvantaged by a Rhode Island forum.

The second § 1404(a) factor – availability of documents – is neutral and insignificant when the documents are mobile.  *Tristar Products, Inc. v. Novel Brands, LLC*, 267 F. Supp. 3d 380 (D. R.I. 2017); *Investors Inc. v. Ameripark, Inc.*, 542 F. Supp. 2d 119, 127 (D. Mass. 2008). This is because "most records and documents now can be transported easily or exist in miniaturized or electronic form."  *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 276 (D. Mass. 2006). Likewise, at present, it does not appear that this case stands to be consolidated with any others, meaning that the third § 1404 factor does not apply to the Court's analysis.  Finally, the last factor —the order in which the court obtained jurisdiction—is inapplicable as there are no parallel or prior-pending actions related to this case.

### C.    The Forum Selection Clause Does Not Preclude Transfer.

While a valid forum selection clause "will be a significant factor that figures centrally in the District Court's calculus," *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 12-13 (1st Cir. 2009), "because § 1404(a) is governed largely by convenience . . . even the presence of a valid and enforceable forum selection clause does not estop a federal court in the contractually-appointed forum from ordering a convenience-type transfer to another district under § 1404(a)." *Textron Fin. Corp. v. Ship & Sail, Inc.*, 2010 WL 1912653 (D.R.I. May 11, 2010) (internal citations

---

[3] Even though many court functions are operating in a virtual fashion at present because of the COVID-19 pandemic, this case is in its earliest stages and it is very foreseeable that, with vaccinations in process throughout the country, in-person proceedings will resume during the pendency of this matter.

omitted). "The forum-selection clause . . . should receive neither dispositive consideration . . . nor no consideration." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988).

Thus, assuming, *arguendo*, its validity (*i.e.*, even if it did not violate Washington statutory law) and its applicability (*i.e.*, even if it did not on its face limit its effect to only claims by Mr. Brown against the company), the forum selection clause is only one factor in the transfer analysis. But while Defendant does not need to show that the forum selection clause at issue here is unenforceable as a condition for transfer to Washington, under the law of the First Circuit, the clause is in fact unenforceable. Among the four grounds the Supreme Court has listed for finding a forum selection clause unenforceable is that its "enforcement would be unreasonable and unjust." *Huffington v. T.C. Group, Inc.*, 637 F.3d 18, 23 (1st Cir. 2011) (quoting *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). In *D'Antuono v. CCH Computax Systems, Inc.*, 570 F. Supp. 708, 711 (D.R.I. 1983), this Court identified a series of factors to aid courts in deciding whether or not to enforce a given forum selection clause:

(1) the identity of the law which governs the construction of the contract;

(2) the place of execution of the contract(s);

(3) the place where the transactions have been or are to be performed;

(4) the availability of remedies in the designated forum;

(5) the public policy of the initial forum state;

(6) the location of the parties, the convenience of prospective witnesses, and the accessibility of evidence;

(7) the relative bargaining power of the parties and the circumstances surrounding their dealings;

(8) the presence or absence of fraud, undue influence or other extenuating (or exacerbating) circumstances; and

(9) the conduct of the parties.

*Russo v. Ballard Med., Prods.*, 352 F. Supp. 2d 177, 181 (D.R.I. 2005) (citing *D'Antuono v. CCH Computax Sys., Inc.,* 570 F. Supp. 708, 712 (D.R.I. 1983)). "While each of these factors has some degree of relevance and some claim to weight, there are no hard-and-fast rules, no precise formulae. The totality of the circumstances, measured in the interest of justice, will – and should – ultimately control. *D'Antuono*, 570 F. Supp. at 712.

At least seven of the nine *D'Antuono* factors militate strongly toward finding the forum selection clause unenforceable. One is neutral, or further supports unenforceability. Only one factor points toward enforcement.

First, Brown executed the noncompetition agreement in Washington, which is also the place where he lives, where he worked with the company, and where the underlying transactions at the heart of this case were performed (factors 2, 3, and 6). Defendant was hired as the Chief Medicare Officer for Aetna's Pacific Northwest and Mountain Region, and throughout the entirety of his tenure with Aetna (both before and after CVS acquired Aetna), Brown lived and worked in the Seattle area. Moreover, the transactions surrounding his termination of employment all occurred in Washington. Because Defendant lives and works in Washington, the vast majority of the documentary evidence reasonably anticipated to be at the heart of written discovery is kept there as well. To the extent Plaintiff's witnesses must travel to Washington for trial or other proceedings, that trip is a built-in aspect of Plaintiff's routine corporate travel and Plaintiff is well-situated to prosecute the case in that forum.

Next, the relative bargaining power of the parties and the circumstances surrounding their dealings militates against enforcing the forum selection clause (factor 7). Defendant is an individual trying to make a living and support his himself. CVS is an enormous, sophisticated, health conglomerate. As one would expect, CVS prepared the Agreement (almost certainly with

the assistance of counsel). Defendant did not have counsel to review the document on his behalf and he understood signing the Agreement "as-is" to be required. CVS clearly possessed significantly more bargaining power than Defendant.

While it is unclear absent pretrial discovery whether fraud, undue influence or other extenuating circumstances occurred in the procurement of the Agreement, CVS's intentional violation of Washington's governing Noncompete Act presents an exacerbating circumstance that evidences willful and outrageous conduct (factors 8 and 9). The clear focus of Defendant's employment activities with CVS was the Pacific Northwest region. All of his assignments were there and all of his business dealings were directed at that region. By contrast, Defendant made very few trips to Rhode Island (and none of his choosing) and had comparatively little dealing with the company's headquarters. Moreover, while Rhode Island has a public policy interest in adjudicating a dispute involving a Rhode Island-based business, that interest does not rise to the level of encouraging resident corporations to circumvent or avoid the laws of its sister states, especially laws that implicate such a strong local state public interest as the employment laws governing the state where the relevant employee lived and worked for the company. (factor 5). *See, e.g.*, *Busby v. Perini Corp.*, 290 A.2d 210, 211 (R.I. 1972) (enforcing the immunity granted by Massachusetts workmen's compensation statute despite the fact that, under Rhode Island's statute, the general contractor would not be immune because the parties were Massachusetts citizens and because the court recognized that permitting a tort action despite immunity provision would seriously undermine the compensation scheme of Massachusetts). Further, Washington has considerable and arguably more interest in equitably applying its employment laws and its statutory enactment limiting employers' use and enforcement of contractual restraints on commercial trade and employment mobility with respect to its citizens and local workforce. *See,*

*e.g.,* Wash. Rev. Code § 49.62.005 ("The legislature finds that workforce mobility is important to economic growth and development.  Further, the legislature finds that agreements limiting competition or hiring may be contracts of adhesion that may be unreasonable.").

One of the remaining *D'Antuono* factors, the availability of remedies in the designated forum (factor 4), applies more neutrally, but still in Defendant's favor.  Plaintiff has prayed for damages and equitable relief, both of which are available to it under the laws of Rhode Island and Washington, including under the Noncompete Act.  If anything, this factor weighs slightly in Defendant's favor to the extent any assets of Defendant Brown are necessary to satisfy a judgment in favor of Plaintiff as those assets presumably lie in Washington and the processes of the Washington courts serve as the appropriate vehicle through which to execute on those assets.

Only one *D'Antuono* factor – the law to be applied (factor 1) – favors enforcing the forum selection clause insofar as the Agreement calls for application for Rhode Island law.  While this provision purports to be a valid election of controlling law, it, like the balance of the contract terms, arose out of a context checkered by significant disparity of bargaining power and relative sophistication of the parties.  Moreover, because Washington has a materially-greater interest in the application of its law to Plaintiff's claims than Rhode Island, even if this case were to be tried in this Court, analysis of the facts and law on a choice of law analysis would lead to the conclusion that the Court should ignore the choice-of-law clause and apply Washington law to Plaintiff's claims (*see* Defendant's memorandum of law in opposition to motion for temporary restraining order, discussion of choice of law).

To summarize, seven of the nine *D'Antuono* factors strongly militate toward a finding that the subject forum selection clause is unreasonable and, therefore, unenforceable.  One factor is neutral, but tends toward discarding the clause.  Against a legal background that gives this Court

discretion under § 1404(a) to transfer this case to Washington as the more appropriate venue even if the forum selection clause is regarded as reasonable and enforceable, such slanted application of these factors underscores that Washington is clearly the more appropriate venue. Accordingly, this case should be dismissed without prejudice for refiling in the United States District Court for the Western District of Washington, or, alternatively, transferred to the Western District of Washington.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this action be dismissed, or in the alternative, transferred to the United States District Court for the Western District of Washington.

Respectfully submitted,

*/s/ Brian J. Lamoureux*
Brian J. Lamoureux (#6211)
Pannone Lopes Devereaux & O'Gara LLC
Northwoods Office Park
1301 Atwood Avenue, Suite 215N
Johnston RI 02919
(401) 824-5100
bjl@pldolaw.com

Shannon L. McDougald, *Pro Hac Vice*
McDougald Law Group
400 108th Avenue NE, Suite 510
Bellevue, WA 98004
(425) 455-2060
smcdougald@mcdougaldlaw.com

Counsel for Defendant Timothy Brown

4838-3515-2093, v. 1

**CERTIFICATION**

I certify that on February 19, 2021, this document was filed using the Court's electronic filing system. Therefore, it is available for viewing and downloading by registered users who have signed up to receive notices in this case.

*/s/ Brian J. Lamoureux*