# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CVS PHARMACY, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. NO. 1:21-cv-00070-WES-LDA |
| ) | |
| TIMOTHY BROWN ) | |
| ) | |
| Defendant. ) | |
| ) | |

### DEFENDANT'S REPLY TO PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY (DKT. #15)

Defendant Timothy Brown ("Mr. Brown") files this response to Plaintiff's Notice of Supplemental Authority, filed March 1, 2021, (Dkt. #15), and in further support of Defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b) and 28 U.S.C. §§ 1404 and 1406 for lack of personal jurisdiction, or, in the alternative, to transfer the matter to the United States District Court for the Western District of Washington. On February 25, 2021, this Court heard argument of counsel on Plaintiff's Motion for Temporary Restraining Order to enjoin the Defendant from employment. The Court emphasized the need to first decide the issue of personal jurisdiction, given the thin basis Plaintiff proffered for attempting to haul Mr. Brown, a Washington State resident, into a Rhode Island court to resolve a dispute that arises from facts that occurred entirely in the Pacific Northwest.

Plaintiff's supplemental filing urges that the Court adopt a bright-line rule: that an employee's execution of a Restricted Stock Unit (RSU) agreement that includes a choice of law provision justifies the Court's exercise of personal jurisdiction. (Dkt. #15 at pp. 1-4.) The two authorities cited by Plaintiff in its supplemental briefing—EMC Corp. v. Petter, 104 F. Supp. 3d 127 (D. Mass. 2015) ("Petter") and Lincoln National Corp. v. Flint, No. 16-cv-02588, 2016 WL 6615036 (E.D. Pa. Nov. 9, 2016) ("Flint")—are plainly distinguishable, do not warrant the adoption of such a bright-line rule, and do not compel the exercise of personal jurisdiction over

1

Mr. Brown in this case.  As such, Plaintiff's purported supplemental authority provides the Court with no useful guidance on the issue of personal jurisdiction.[1]

### Argument

#### A.    The EMC Corp. v. Petter decision is factually and legally distinguishable.

Plaintiff cites the Petter case for the proposition that a defendant's acceptance of an RSU Agreement constitutes a purposeful availment that warrants the exercise of personal jurisdiction over a party outside the forum state. (Dkt. #15 at pp. 3-4.) The Petter case, however, is not so far reaching or applicable as Plaintiff suggests.

First, the scope of the bilateral forum selection and choice of law clause in Petter far exceeds the unilateral clause applicable here. The forum selection clause in the restricted stock agreement Petter signed specifically stated that "[t]he parties submit to the exclusive jurisdiction and venue of the federal or state courts of the Commonwealth of Massachusetts to resolve issues that may arise out of or relate to the Plan or the same subject matter." Petter, 104 F. Supp. 3d, at 130.  The court found that the exercise of personal jurisdiction was appropriate and reasonably foreseeable to the defendant because the defendant had assented to a valid forum selection and choice of law clause invoking the protections of Massachusetts' law and courts. Id. at 133.  By contrast here, the forum selection clause in Mr. Brown's Restrictive Covenant Agreement (the "Agreement") does not include any explicit or implicit consent to personal jurisdiction in Rhode Island.  In its entirety, the clause simply states: "This Agreement shall be governed by and construed in accordance with the Laws of the state of Rhode Island.  I [Brown] agree that any claim or dispute I may have against the Corporation [CVS/Aetna] must be resolved by a court located in the state of Rhode Island."  Mr. Brown unequivocally did *not* agree to adjudicate *all claims exclusively in the state of Rhode Island* in the way the defendant did in Petter. Where the contract between Mr. Brown and CVS provided that *only Mr. Brown's claims against CVS* were

---

[1]    With regard to the issue of venue based on Defendant's receipt of equity in a corporation domiciled in the forum state, Plaintiff does not provide the Court with any supplemental case law. Mr. Brown has already addressed the venue arguments raised by Plaintiff in his Memorandum of Law in Support of Motion to Dismiss or Transfer Venue. (Dkt. #11).

governed by Rhode Island's laws, the clause in Petter was reciprocal, mandating that *both parties* must, if at all, submit disputes to the "exclusive jurisdiction and venue" of the courts of Massachusetts. Based on Plaintiff's RSU agreement applicable to this case, it was only foreseeable that *if Mr. Brown* filed suit *against* CVS, then his claims must be resolved before the courts of Rhode Island. The reciprocity in Petter is lacking in this instance. Thus, unlike the forum selection clause in Petter, the forum selection clause in Mr. Brown's Agreement does not operate as a consent to jurisdiction in Rhode Island and fails to give Brown any reasonable expectation that he would be hauled into court by CVS/Aetna in Rhode Island.

Moreover, the plaintiff in Petter advanced claims against defendant based on an alleged breach of the restricted stock plan agreement that Petter had signed. The covenant was embedded in, and the plaintiff was suing on, the RSU plan agreement itself. The court specifically noted that plaintiff's claims arose out of the stock plan agreement itself, thereby satisfying the relatedness prong of the minimum contacts test. 104 F. Supp. 3d, at 133. Here, Plaintiff ignores that critical distinction. CVS/Aetna's claims against Mr. Brown do not arise under the restricted stock plan agreement. Rather, Plaintiff's claims against Mr. Brown are based on an alleged breach of the Agreement, which is an entirely separate contract from the stock plan agreement itself. Plaintiff made signing "a restrictive covenant" a condition of acceptance of 2019 equity share awards, and then gave Mr. Brown a separate contract—the Agreement—on which Plaintiff now sues Mr. Brown. This distinction is critical when considered in light of the relatedness prong of the First Circuit's well-established three-prong test to determine whether sufficient contacts exist to allow this Court to exercise specific personal jurisdiction: "*First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities*." Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 712-12 (1st Cir. 1996) (emphasis added).

The court in Petter also applied the "gestalt factors" to conclude that Massachusetts, as opposed to the United Kingdom—the competing forum—was the suitable jurisdiction. In this case, Washington state—where the relevant facts giving rise to this action occurred and where the relevant factual witnesses and evidence are located—is the competing forum. The Petter court's

3

comparison of Massachusetts with a venue in the United Kingdom is a vastly different consideration from this Court's present election, where there is a suitable alternative venue readily available to Plaintiff in Washington state.

> **B.    The defendant in the <u>Lincoln Nat'l Corp. v. Flint</u> case resided in the forum state for nine years during his employment with the plaintiff.**

The <u>Flint</u> case cited by Plaintiff is even more easily distinguished. Contrary to Plaintiff's argument, the court in <u>Flint</u> did not hold that the defendant's acceptance of restricted stock in exchange for a noncompete agreement was sufficient, in and of itself, to subject the defendant to jurisdiction in Pennsylvania. Rather, the facts of the case revealed that Flint had worked for plaintiff's subsidiaries for nine years in Pennsylvania, that he had resided in Pennsylvania that entire time, and that his restricted stock agreement had been formed and entered into entirely in Pennsylvania. 2016 WL 6615036, at *3. Indeed, Flint acknowledged that his former employment with plaintiff's subsidiaries "gave rise to the grants of money and stock at issue." <u>Id</u>. Unsurprisingly, based on these critical facts, the court found that the defendant, who had spent almost a decade in the forum state, purposefully availed himself of the benefits of that forum and should have reasonably anticipated that plaintiff would seek to enforce the restricted stock agreements in Pennsylvania. Mr. Brown, by stark contrast, had no such residence (long-term or short-term) in the state of Rhode Island.[2] These significant distinctions eliminate any argument by Plaintiff that Brown should have reasonably expected that CVS/Aetna would have sought to enforce the terms of his noncompete agreement (which again, is completely separate from his RSU Agreement) in Rhode Island.

---

[2]    Again, Mr. Brown notes that his singular business trip to Rhode Island ***at Plaintiff's request*** is not the type of voluntary or purposeful injection into Rhode Island as Plaintiff would like it to be. Mr. Brown, like any loyal employee, would not have the meaningful choice to say "no" to its employer in such circumstances. Mr. Brown's conduct here falls far short of what due process requires to find jurisdiction over him.

4833-2944-6879, v. 1

### C.  Jurisdiction should not be exercised based on a defendant's receipt of equity in an in-forum corporation.

An RSU agreement is not dispositive of the issue of personal jurisdiction in the bright-line way urged by Plaintiff. For example, the U.S. District Court for the Eastern District of Arkansas in Acxiom Corp. v. Briggs dismissed a plaintiff's lawsuit against two former employees for lack of jurisdiction, despite the existence of *multiple RSU agreements* between the parties. (Acxiom Corp. v. Briggs, 4:12CV00165 SWW, 2012 WL 5185870, at *1 (E.D. Ark. Oct. 18, 2012).) The defendants in that case—two former employees of the plaintiff—signed RSU agreements, which included forfeiture provisions, providing that the defendants would forfeit their equity interests if they resigned and worked for a competitor of plaintiff. Id.  After the defendants resigned to work for a competitor, the plaintiff filed its contract action for breach of the defendants' RSU agreements and sought to recover the value of forfeited shares issued to the defendants (as well as a declaratory judgment that the plaintiff owed nothing under separate bonus agreements). Id. at *1-2.

The court found that the plaintiff had failed to carry its *prima facie* burden to show personal jurisdiction by the Arkansas court over the defendants and therefore dismissed the action without prejudice. "The RSU Agreements require that Defendants," the court noted, "sign stock award notices and return them to [the plaintiff] in Arkansas and pay [the plaintiff] in the event of forfeiture. However, the Court finds no contract terms that would require Defendants to engage in substantial activity in Arkansas. Although Defendants made several in-person visits to Arkansas during their employment with [the plaintiff], the Court finds no evidence that those visits were connected to the negotiation or performance of the RSU and Bonus Agreements." Id. at p. *4.

Acxiom Corp. v. Briggs highlights how a defendant's equitable ownership in an entity that resides in the forum state is not a basis to exercise personal jurisdiction. Multiple factors must be analyzed. As the record in this matter shows, Plaintiff has failed to carry its *prima facie* burden to show that, all things considered, personal jurisdiction by this Rhode Island court, over Mr. Brown, a Washington state resident, is warranted.

**Conclusion**

The underlying facts and substantive arguments made in the supplemental authority provided by Plaintiff differ substantially from the facts and Plaintiff's arguments in support of personal jurisdiction in this matter. As a result, Defendant respectfully submits that the "supplemental authority" offered by Plaintiff cannot be considered any meaningful authority at all, and Plaintiff's Notice of Supplemental Authority (ECF No. 15) should be disregarded by the Court.

Dated: March 2, 2021                Respectfully submitted,

*/s/ Brian J. Lamoureux*
Brian J. Lamoureux (#6211)
Pannone Lopes Devereaux & O'Gara LLC
Northwoods Office Park
1301 Atwood Avenue, Suite 215N
Johnston RI 02919
(401) 824-5100
bjl@pldolaw.com

Shannon L. McDougald, *Pro Hac Vice*
McDougald Law Group
400 108th Avenue NE, Suite 510
Bellevue, WA 98004
(425) 455-2060
smcdougald@mcdougaldlaw.com

Counsel for Defendant Timothy Brown

**CERTIFICATION**

I certify that on March 2, 2021, this document was filed using the Court's electronic filing system. Therefore, it is available for viewing and downloading by registered users who have signed up to receive notices in this case.

*/s/ Brian J. Lamoureux*