```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF RHODE ISLAND
_____
                                    )
CVS PHARMACY, Inc.,                 )
                                    )
        Plaintiff,                  )
                                    )
     v.                             )   C.A. No. 21-070 WES
                                    )
TIMOTHY M. BROWN                    )
                                    )
        Defendant.                  )
_____)
```

**MEMORANDUM AND ORDER**

Along with its Complaint, Plaintiff CVS Pharmacy filed an Emergency Motion for a Temporary Restraining Order and a Motion for Preliminary Injunction, ECF No. 3. In addition to his Opposition, ECF No. 12, Defendant Timothy Brown filed Motion to Dismiss or Transfer Venue, ECF No. 10. For the reasons that follow, the Motion to Dismiss or Transfer Venue is GRANTED, and the case is transferred to the Western District of Washington to cure lack of personal jurisdiction.

I.  Background

In 2017, Timothy Brown began working at Aetna, which is headquartered in Connecticut. Compl. ¶ 4, ECF No. 1; Notice of Suppl. Authority 8 n.2, ECF No. 15. He served first as a Medicare General Manager and later as a Chief Medicare Officer for the Northwest and Mountain regions of the United States. Compl. ¶¶ 4, 28. In November 2018, Aetna was acquired by CVS. Id. ¶ 3.

After receiving $97,750 in restricted stock units from CVS, Brown signed a noncompete agreement, promising that he would not do certain types of work for any competitor for one year after leaving CVS.  Id. ¶¶ 29-36.  The contract stated that the stock options were contingent on his acceptance of the agreement.  See Restrictive Covenant Agreement ¶ 1, ECF No. 1-1.  In January 2021, Brown gave notice that he was leaving Aetna/CVS and accepted a position as Medicare Advantage Performance Officer, Managing Director, for Cigna, which competes with Aetna in the Medicare Advantage field.  Compl. ¶¶ 37, 105.  After failed negotiations between the parties and Cigna, CVS sued, seeking to enjoin Brown from working for Cigna in the Medicare Advantage field for twelve months.  Id. ¶ 106 and page 33.  CVS argues that Brown has confidential information regarding Aetna's business plans in the Medicare Advantage market.  Id. ¶¶ 52-100.

On February 11, 2021, the Court held a conference and set an expedited briefing schedule.  Brown then filed his Motion to Dismiss or Transfer Venue, as well as an Opposition to the Motion for Temporary Restraining Order.  CVS filed a Reply to Defendant's Opposition to Emergency Motion for Temporary Restraining Order ("Reply"), ECF No. 13, responding to both the Opposition and the Motion to Dismiss or Transfer.[1]

---

[1] In its Reply, CVS states that it "reserves the right to file a brief in opposition to Defendant's Motion to Dismiss and/or

II.  Discussion

Brown argues that the case should be dismissed based on lack of personal jurisdiction.  Def.'s Mem. Supp. Mot. to Dismiss or Transfer Venue 5-11, ECF No. 11.  "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002).  "Rhode Island's long-arm statute claims jurisdiction to the maximum extent permitted by the Fourteenth Amendment." Dennett v. Archuleta, 915 F. Supp. 2d 248, 251 (D.R.I. 2013). Thus, the sole question presented is whether personal jurisdiction over Brown would comport with the Due Process Clause.  See id.

---

Transfer Venue" and that it "understood its reply brief was to be limited to the issues raised by Brown in his opposition to Plaintiff's Emergency Motion for Temporary Restraining Order." Reply 13 n.4, ECF No. 13.  There is no need for further briefing. At the conference on February 11th, Brown's counsel requested time to brief the issue of the temporary restraining order, stating that he wanted to argue that this Court lacks personal jurisdiction and that venue is improper in Rhode Island.  CVS's counsel requested the opportunity to respond to the jurisdictional and venue arguments; that opportunity was granted in the form of the Reply brief.  Indeed, given the emergency nature of the Motion for a Temporary Restraining Order, a reply would not have been warranted if it were not for the Motion to Dismiss or Transfer Venue.  The Court's decision to transfer this case is based on lack of personal jurisdiction, and CVS's arguments regarding personal jurisdiction are fully developed, spanning nine pages of its Reply. See Reply 13-21.  Thus, the issue is ripe.

3

Because the basic facts underlying CVS's claim of jurisdiction are not disputed, the Court will utilize the prima facie method of determining personal jurisdiction. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (noting that prima facie method is ill-suited to cases "that feature conflicting versions of the facts").[2]  "Under this standard, the court need only 'consider . . . whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, 46 F.3d at 145).

CVS claims that this Court has specific (as opposed to general) jurisdiction over Brown. See Reply 14. The First Circuit has identified three requirements for specific jurisdiction: "First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of

---

[2] The parties seem to agree that the prima facie method should be used. See Pl.'s Reply 13; Def.'s Mem. Supp. Mot. to Dismiss or Transfer Venue 6, ECF No. 11.

4

jurisdiction must . . . be reasonable." PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (citation and quotations omitted).  Brown focuses his arguments on the second prong: purposeful availment.  Def.'s Mem. Supp. Mot. to Dismiss or Transfer Venue 10-11.  The Court agrees that this requirement has not been met.[3]

For a court to exercise personal jurisdiction over an out-of-state defendant, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)); see also Asahi Metal Indus. Co. v. Superior Court of California, Solano Cty., 480 U.S. 102, 112 (1987) (requiring "an action of the defendant personally directed toward the forum State.").  This requirement is "akin to a rough quid pro quo, that is, when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior."  Bluetarp Fin., Inc. v. Matrix Const. Co., Inc., 709

---

[3] Due to this conclusion, there is no need to analyze relatedness or reasonableness.  See PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 19 & n.5 (1st Cir. 2019).

5

F.3d 72, 82 (1st Cir. 2013) (citation and quotations omitted). The focus of this requirement is "voluntariness and foreseeability." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 10 (1st Cir. 2009) (citation and quotations omitted).

CVS argues that Brown purposefully availed himself of the privilege of conducting activities in Rhode Island because he signed a noncompete agreement stating that Rhode Island law governs any disputes arising from the contract;[4] he attended a single multi-day CVS training in Rhode Island; he was employed by CVS, a Rhode Island corporation; and he received CVS stock through his employment. See Reply 16-17, 19.

The choice-of-law clause in the noncompete agreement supports CVS's contention that Brown should have expected to have the protection of Rhode Island law. However, a contract between the

---

[4] For the purposes of this decision, the Court assumes without deciding that the choice-of-law clause is valid and enforceable. The noncompete agreement also states that any claims brought by Brown against CVS must be adjudicated in a Rhode Island court. See Restrictive Covenant Agreement ¶ 19, ECF No. 1-1. Clearly, that provision does not govern the instant action, which was brought by CVS against Brown. The implications to be drawn from this unidirectional forum selection clause are unclear. On one hand, it shows that Brown could have expected the possibility of Rhode Island-based litigation in some form or another. On the other hand, the fact that the agreement specifically designated Rhode Island as the site for Brown-initiated litigation without mentioning CVS-initiated litigation could be interpreted as affirmative proof that a case brought by CVS would not necessarily occur in Rhode Island. Thus, the Court concludes that the forum selection clause does not weigh in either direction.

parties agreeing that the law of the forum state will govern the contract is not on its own sufficient to establish personal jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985) (holding that a choice-of-law clause in a contract between Burger King and an out-of-state franchisee, "when combined with the 20-year interdependent relationship" between the parties, established personal jurisdiction over the franchisee). Thus, the question is whether CVS has established so-called "plus" factors sufficient to bolster the choice-of-law clause.

CVS's remaining evidence is that Brown worked for a Rhode Island company for two years, travelled to Rhode Island once, and accepted stock in CVS. In Walden v. Fiore, 571 U.S. 277 (2014), the Supreme Court held that "the plaintiff cannot be the only link between the defendant and the forum." Id. at 285. "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. This holding deals a significant blow to CVS's evidence, which largely focuses on the fact Brown did work that benefitted CVS and that a breach of his contract could hurt CVS.

A survey of cases in which in-state companies sue their out-of-state former employees for breach of noncompete agreements shows that purposeful availment generally turns on the frequency and numerosity of contact – in-person or otherwise - between the out-of-state employee and in-state persons. Where the out-of-

7

state employee had regular contact with in-state workers, personal jurisdiction exists. See, e.g., Tekway, Inc. v. Agarwal, 19-CV-6867, 2020 WL 5946973, at *6 (N.D. Ill. Oct. 7, 2020) (finding personal jurisdiction over out-of-state employee who reached out to in-state employees to apply for job, signed contract with choice-of-law clause, and communicated "regularly" by phone, email, and messaging applications with in-state employees); Hilb Group, LLC v. Rabinowitz, CV 18-00555 WES, 2019 WL 3543690, at *2 (D.R.I. Aug. 2, 2019) (Defendant who "allegedly purposefully stole clients" from his Rhode Island employer purposely availed himself because he "received benefits from employment in Rhode Island, corresponded daily and extensively with the Rhode Island office via email and telephone, relied heavily on Rhode Island employees for job-related tasks, and visited the Rhode Island office six times for work."); Lombard Med. Techs., Inc. v. Johannessen, 729 F. Supp. 2d 432, 437 (D. Mass. 2010) (finding jurisdiction where contract had choice-of-law clause and out-of-state employees received paychecks from the forum state, sent weekly expense reports and updates to employees in the forum state, and "would, from time to time, report in person"); Pro Edge, L.P. v. Gue, 374 F. Supp. 2d 711, 733 (N.D. Iowa 2005), modified, 411 F. Supp. 2d 1080 (N.D. Iowa 2006) (finding jurisdiction over employee who signed contract with choice-of-law clause, received "partnerships units" in the company, had a direct supervisor based in Iowa,

8

contacted the main office by phone four to eight times per week, and travelled to Iowa twice); Prod. Group Intern., Inc. v. Goldman, 337 F. Supp. 2d 788, 792 (E.D. Va. 2004) (finding jurisdiction over out-of-state employee who signed employment contract with Virginia company, worked for the company for six years, communicated frequently with Virginia employees, and made three trips to Virginia headquarters).

Conversely, where the direct contact between the out-of-state employee and in-state employees is meager, courts have found a lack of personal jurisdiction. See, e.g., Trinity Video Communications, Inc. v. Carey, 3:16-CV-00730-TBR, 2017 WL 1282247, at *4 (W.D. Ky. Apr. 4, 2017) (no jurisdiction in Kentucky where contract had a choice-of-law provision and all compensation, benefits, and email accounts were administered in Kentucky, because the out-of-state employees were recruited and interviewed in West Virginia to do work solely in West Virginia, they never travelled to Kentucky, and they were supervised by a West Virginia employee); Guaranteed Rate, Inc. v. Lapham, 2012 WL 6138947, at *3 (N.D. Ill. Dec. 6, 2012) (no jurisdiction over former vice president in charge of out-of-state branch office because defendant's duties were "focused entirely on California," and the alleged breach of contract "took place in California"); FCStone LLC v. Buckley, 864 F. Supp. 2d 816, 824-25 (S.D. Iowa 2012) (no personal jurisdiction in Iowa despite fact that employer was based

9

in Iowa and contract had a clause stating that Iowa law applied to any disputes); Microfibres, Inc. v. McDevitt-Askew, 20 F. Supp. 2d 316, 318-19 (D.R.I. 1998) (no jurisdiction, despite contract clause stating that employee consented to personal jurisdiction, because her responsibilities were primarily in another state, she only communicated with headquarters "an indeterminate, although small, number" of times, and she travelled to forum state only three times); Protective Ins. Co. v. Cody, 882 F. Supp. 782, 785 (S.D. Ind. 1995) (no personal jurisdiction over out-of-state employees who "knowingly entered into an employment contract with the local agent of an Indiana-based corporation[,]" "submitted and received employment-related documents from the employer's Indiana headquarters," and "accepted workers compensation benefits from Plaintiff that allegedly were paid pursuant to Indiana law").

Here, CVS's pleadings acknowledge that Brown's work focused on the Northwest and Mountain regions of the country. Compl. ¶ 4, ECF No. 1. Moreover, CVS does not make any assertions or provide any evidence regarding whether and with what frequency Brown's work involved direct interactions with employees in Rhode Island. See, e.g., Reply 16-17, 19, ECF No. 13. The only direct connection to Rhode Island (aside from the choice-of-law clause), as opposed to indirect connections via CVS, is Brown's single trip to the state. This falls below the standard for purposeful availment.

10

Additionally, courts have found relevant whether the defendant initiated the relationship with the in-state corporation. See Adelson, 652 F.3d at 82–83 (holding that there was purposeful availment partly because defendant "sought" employment "with a company whose key officers were all located in [the forum]"); Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999) ("Without evidence that the defendant actually reached out to the plaintiff's state of residence to create a relationship — say, by solicitation — the mere fact that the defendant willingly entered into a tendered relationship does not carry the day." (citation omitted)).

Here, as emphasized by Brown, he never accepted a job with CVS. Def.'s Mem. Supp. Mot. to Dismiss or Transfer Venue 10, ECF No. 11. Rather, he accepted a position with Aetna, a Connecticut corporation, which was subsequently acquired by CVS. Compl. ¶ 3. Although he acceded to a relationship with a Rhode Island company by maintaining his employment for two years following the acquisition, he did not initiate or seek out a relationship with a Rhode Island company. Thus, to the extent that his relationship with CVS itself involved a connection with Rhode Island, it was not a connection that he purposefully created.

Moreover, Brown's ownership of CVS stock weighs only mildly in favor of jurisdiction. A parent company that wholly owns a subsidiary is not subject to personal jurisdiction in the place of

11

incorporation or headquarters of the subsidiary unless the parent corporation has other connections to the forum. See de Walker v. Pueblo Intl., Inc., 569 F.2d 1169, 1172-73 (1st Cir. 1978). Thus, ownership of $97,750 in stock, a minute portion of equity in a multibillion-dollar corporation like CVS, does not necessarily play a major role in jurisdictional analysis. The cases cited by CVS, see Notice of Suppl. Authority 2-3, ECF No. 15, are easily distinguishable because the plaintiffs in those cases sought to rescind the vesting of the defendants' stock options pursuant to the terms of the contracts at issue. See Lincoln Nat'l Corp. v. Flint, No. 16-cv-02588, 2016 WL 6615036, at *2 (E.D. Pa. Nov. 9, 2016); EMC Corp. v. Petter, 104 F. Supp. 3d 127, 130-31 (D. Mass. 2015). Here, CVS does not seek rescission; rather CVS wants to prevent Brown from working at Cigna. See Compl. 33. Furthermore, each case cited by CVS has additional facts not present here that provide a much stronger basis for personal jurisdiction. See Lincoln Nat'l, 2016 WL 6615036, at *2 (noting that, although defendant had moved to another state by the time of the litigation, defendant had lived and worked in forum state for the entirety of his nine-year stint working for plaintiff); EMC, 104 F. Supp. 3d at 130-34 (relying heavily on contract clause stating that "the parties submit to the exclusive jurisdiction and venue of" the forum state).

The dust having settled (unlike the parties), little remains to buttress the choice-of-law provision. Brown's abstract connections to Rhode Island via his former employer, along with his single trip to the Ocean State, are insufficient to nudge CVS's case over the jurisdictional line. Though this case presents a close call, the Court concludes that CVS has failed to meet its burden of showing that Brown "purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State . . . ." United Elec., Radio and Mach. Workers of Am., 960 F.2d at 1088.[5]

Thus, the case cannot proceed in this Court. The final question is whether the action should be dismissed or transferred. A district court may dismiss a case for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. However, if a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631. See also Fed. Home Loan Bank of Boston v. Moody's Corp., 821 F.3d 102, 119 (1st Cir. 2016) (holding that § 1631 applies to defects

---

[5] Due to this conclusion, the Court does not reach the issue of venue or address the substantive merits of CVS's request for injunctive relief.

of personal jurisdiction), abrogated on other grounds by Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553 (2017); Republic of Kazakhstan v. Ketebaev, 17-CV-00246-LHK, 2018 WL 2763308, at *4 (N.D. Cal. June 8, 2018) ("Although there is a circuit split whether § 1631 applies when a court lacks personal jurisdiction, the Ninth Circuit appears to have adopted the view that transfer under § 1631 can be appropriate to cure lack of personal jurisdiction." (citing Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758, 761-62 (9th Cir. 1990) (other citation omitted)).

Brown requests dismissal as the remedy for want of jurisdiction, and neither party mentions § 1631. See Def.'s Mem. Supp. Mot. to Dismiss or Transfer Venue 5; Reply. Nonetheless, "the court considers the question sua sponte consistent with the First Circuit's determination that § 1631 creates a presumption in favor of transfer rather than dismissal in cases where a court determines it lacks jurisdiction." Shelton Brothers, Inc. v. Three Pirates, LLC, CV 15-30140-MGM, 2017 WL 1227922, at *6 (D. Mass. Mar. 31, 2017) (citing Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003)). The mechanism of 28 U.S.C. § 1631 should be utilized unless "transfer is not in the interest of justice." Britell, 318 F.3d at 74. "Congress wanted courts to exempt from the transfer mandate those cases in which transfer would unfairly benefit the proponent, impose an unwarranted hardship on an

14

objector, or unduly burden the judicial system." Id. at 74 (citations omitted).

Here, all signs point to the Western District of Washington. Brown lived and worked in that district throughout his employment. See Reply 17 ("Brown was based in Washington . . . ."); Brown Decl. ¶ 3, ECF No. 11-1. Defense counsel has represented to the court that Brown plans to continue residing in that district. Moreover, dismissal could lead to refiling, further delaying a case that is of great urgency for both parties. In response to Brown's request for transfer to cure lack of venue, CVS remarks in its Notice of Supplemental Authority that the District of Connecticut would be preferable to the Western District of Washington. See Notice of Suppl. Authority 8 n.2, ECF No. 15. However, the record before this Court does not make clear that personal jurisdiction would lie in Connecticut, and that is not a remedy requested in the motion. Therefore, to encourage judicial efficiency and avoid undue delay, transfer to the Western District of Washington is appropriate.[6]

---

[6] Of course, CVS always has the option of dismissing this case and refiling in Connecticut, or moving to transfer venue once the case is sent to the Western District of Washington.

III. Conclusion

Defendant's Motion to Dismiss or Transfer Venue, ECF No. 10, is GRANTED, and the case is transferred to the Western District of Washington to cure lack of personal jurisdiction.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
District Judge
Date:  March 3, 2021